The Honorable James L. Robart

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| KENNETH ARONSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>5 STAR APPAREL LLC,<br><br>Defendant. | Case No. 2:25-cv-02691-JLR<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

## I. INTRODUCTION

1. This is a putative class action under Washington law brought to address deceptive and unlawful emails that plague consumers' inboxes. The Washington legislature, concerned with deception in emails, enacted the Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190, which, among other things, prohibits any person from sending a commercial email with a false or misleading subject line. RCW 19.190.020.

2. Defendant 5 Star Apparel LLC ("Defendant" or "Billabong") sells and markets various Billabong-brand surfing and skateboarding clothing and accessories (the "Products") through Defendant's website https://www.billabong.com/.

3. Defendant Billabong engages in the precise activity which CEMA prohibits.

4. Defendant markets its Products by email to Washington residents. The subject lines in these emails often promote "sales" and "discounts" on the Products. However, some subject lines are false, misleading, and unlawful because they promote misleading discounts and under false time restrictions.

5. Getting an advertised bargain is important to consumers. Consumers are more likely to purchase an item if it is advertised as a good deal.

6. Further, if a sale is advertised as ending soon, consumers are even more likely to buy now, rather than wait, comparison shop, and/or buy something else.

7. There is nothing wrong with a legitimate sale. But a deceptive sale—that is, one with made-up expirations—is illegal. Moreover, advertising false and misleading discounts in the subject line of a promotional email violates CEMA and the Washington Consumer Protection Act ("CPA"). *Brown v. Old Navy LLC*, 567 P.3d 38 (Wash. 2025).

8. Defendant sent emails with misleading subject lines regarding "sales" that would supposedly end on a specific day when in truth the sales were extended or not limited to the extent represented in the subject line of the email.

9. For example, Defendant sent an email with the subject line "Last Day to Save." This subject line would lead reasonable consumers to believe that if they don't buy before the sale ends,



EMERY | REDDY, PC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

they won't be able to get the advertised discount. In truth, the sale did not end at the advertised time—it was extended for another day. So, the deal did not genuinely expire at the time advertised in the email subject line.

10. Plaintiff is a Washington resident who received Defendant's deceptive email advertisements. Plaintiff brings this case to protect Washington residents from Defendant's false and misleading emails about its purported limited-time discounts.

## II. PARTIES

11. Plaintiff Kenneth Aronson is domiciled in King County, Washington and has been a citizen and resident of Washington during at least the preceding three years. He received Defendant's deceptive emails while present in Washington.

12. The proposed class includes citizens of Washington.

13. Defendant 5 Star Apparel LLC is a New York limited liability company. On information and belief, Defendant is headquartered in New York and is the entity responsible for operating and marketing the Billabong.com e-commerce store, and sending the emails at issue regarding the Billabong-brand Products.[1] On information and belief, and as explained below, Defendant has access to personal identifiers like name, email address, and IP address for recipients of its marketing emails.

## III. JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than one hundred putative Class Members, and minimal diversity exists because the putative Class Members are citizens of a different state than Defendant.

15. This Court has personal jurisdiction over Defendant. Defendant transacts business in Washington. The claims giving rise to this action arise from Defendant's transaction of business in Washington State, and its purposeful transmission of electronic mail messages to Washington

---

[1] https://www.o5group.com/o5apparel (last visited January 27, 2026).



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

residents. This Court also has personal jurisdiction over Defendant under RCW 19.86.160 because Defendant engaged in conduct in violation of the CPA that had an impact in Washington.

16. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) and (c)(2). A substantial part of the events giving rise to the claims emanated from activities within this District. Moreover, Defendant can be deemed to reside in this District because it is subject to personal jurisdiction in this Court with respect to this civil action. At all relevant times, Defendant transacted business in this District, including by sending electronic mail messages and selling products to residents of this District.

## IV. FACTUAL ALLEGATIONS

### A. CEMA Protects Washington Consumers from Deceptive Spam Emails.

17. The Supreme Court in Washington has made clear: "[A]ll internet users…bear the cost of deceptive spam." *State* v. *Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

18. In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

19. In the nearly three decades since, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

20. The problems, however, are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

21. In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

22. In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email.[2]

[2] Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).


EMERY | REDDY, PC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

23. Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction."[3]

24. Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much."[4]

25. CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

26. CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

27. CEMA's "truthfulness requirements" thereby advance the statute's aim of protecting consumers "from the problems associated with commercial bulk e-mail" while facilitating commerce "by eliminating fraud and deception." *Id.*

28. CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

29. CEMA's protections do not depend on whether any email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

---

[3] Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

[4] Kaitlyn Wells, *Email Unsubscribe Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/ (last visited January 27, 2026).



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

30. The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

**B. The Subject Lines of Defendant's Marketing Emails Make False Time Scarcity and Discount Magnitude Claims**

31. One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce.[5]

32. The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached."[6]

33. False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities."[7]

34. Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit."[8]

35. Under time pressure, "consumers might take up an offer to minimise the uncertainty of passing it up."[9]

36. False time scarcity claims thus harm consumers by manipulatively distorting their decision-making to their detriment—and the seller's benefit.

---

[5] Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/ (last visited January 27, 2026); *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/ (last visited January 27, 2026).

[6] *Bringing Dark Patters to Light*, *supra* para. 31, at 22.

[7] *Online Choice Architecture*, *supra* para. 31, at 26.

[8] *Id.*

[9] *Id.*



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

37. Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited."[10] *Id.* at 27.

38. These false time scarcity claims are repeatedly employed in the subject lines of Defendant's emails.

39. For example, Defendant sent an email to Plaintiff on September 1, 2025 entitled "Day Off = (Last) Day to Save!" implying that September 1, 2025 was the final day of the sale. However, Defendant then sent an email on September 2, 2025 with the subject line "We Extended The Sale." So, the sale did not genuinely expire on September 1, 2025 as represented in the email subject line.

40. To make matters worse, buried in fine print at the bottom of Defendant's September 1, 2025 email (using barely legible grey font against a grey background) is a statement that the sale "ends on September 2, 2025, at 11:59 p.m. PST / September 3, 2025 at 2:59 a.m. EST," a full day later than the subject line claims. So, Defendant knowingly sent an email with a false subject line, and always planned to extend the sale by an additional day.

41. On information and belief, this is not a new or isolated occurrence. Defendant thus knowingly sends emails containing misleading sale expiration dates in the subject lines.

42. For example, on August 5, 2025, Defendant sent an email with the subject line "Last Day for 25% Off Sale!" But on August 6, 2025, Defendant sent an email with the subject line "Good News: Sale's Extended!" So, the sale did not end on August 5, 2025 as represented.

43. On July 6, 2025, Defendant sent an email with the subject line "Last Chance To Save 20%." But the sale did not end on July 6. Instead, on July 7, 2025, Defendant sent an email with the subject line "Extended: 20% Off Is Almost Gone!"

44. On May 26, 2025, Defendant sent an email with the subject line "Last Day To Save Up To 30%." But the sale did not expire that day. Instead, on May 27, 2025, Defendant sent an email with the subject line "Extended: Memorial Day Savings Until Tonight!"

45. On November 24, 2024, Defendant sent an email with the subject line "LAST CHANCE Extra 40% off Sale Items." But on November 25, 2024, after the sale supposedly expired,

---

[10] *Id.* at 27.

Defendant instituted a new comparable sale and sent an email with the subject line "You're In! Black Friday Sale Starts Now: Extra 50% Off All Sale."

46. These are just a few examples from a very narrow time frame.

**C. <u>Billabong Knows or Should Know When it Sends Emails to Washington Residents</u>**

47. A sophisticated commercial enterprise, like Billabong's, which is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are peculiarly within its knowledge.

48. First, the sheer volume of email marketing that Billabong engages in put it on notice that Washington residents would receive its emails. Between August 30, 2025 and November 11, 2025, Defendant sent Plaintiff at least fourteen individual marketing emails.

49. Second, Billabong may obtain location information tied to email addresses when consumers make purchases from Billabong through digital platforms, including Billabong's website, or otherwise self-report such information to Billabong. Billabong also obtains and has access to the IP addresses for the devices used to visit the website, including when users provide their email addresses to Billabong.

50. Third, Billabong may obtain location information tied to email addresses by tracking the IP addresses of devices used to open its emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

51. Specifically, Billabong likely uses an Oracle service to manage its email marketing campaigns. This platform should allow Billabong to access a list of every email address that was sent a marketing email. It should also allow Billabong to determine who viewed the emails and who clicked on any links within them.

52. Billabong is likely able to infer the general geographic location of recipients by state based on their IP address at the time of email open or link click.

53. Indeed, under the heading "Information We Collect about Your Usage," Billabong's Privacy Policy states: "We may also automatically collect certain information about your interaction



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

with the Services ('Usage Data'). To do this, we may use cookies, pixels and similar technologies ('Cookies'). Usage Data may include information about how you access and use our Site and your account, including device information, browser information, information about your network connection, *your IP address* and other information regarding your interaction with the Services." Under the heading "Information We Obtain from Third Parties," Billabong's Privacy Policy states: "When you *visit our Site*, *open or click on emails we send you*, or interact with our Services or advertisements, we, or third parties we work with, may automatically collect certain information using online tracking technologies such as pixels, web beacons, software developer kits, third-party libraries, and cookies." And under the heading "How We Disclose Personal Information," Billabong's Privacy Policy States: "We have in the past 12 months disclosed the following categories of personal information . . . Geolocation data such as *locations determined by an IP address* or other technical measures," and this information has been disclosed to "vendors and third parties," "business and marketing partners," and "affiliates."

54. Fourth, Billabong may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

55. Fifth, Billabong may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

56. Sixth, Billabong may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

57. It is thus highly probable that a seller with the size and sophistication of Billabong employs not just one, but several means of tying consumers' email addresses to their physical locations, at least at the state level.

**D. <u>Billabong Violated Plaintiff's Rights Under CEMA to be Free from Deceptive</u>**

**Commercial Emails**

58. Billabong has spammed Plaintiff with commercial emails whose subject lines contain false or misleading statements in violation of their right to be free from such annoyance and harassment under CEMA.

59. Plaintiff provided Billabong with his email addresses, via Billabong.com, while physically located in Washington. In so doing, Defendant collected his personally identifying information, including at least email address and IP address.

60. Plaintiff opened some of the emails sent by Billabong. In so doing, on information and belief, Defendant collected his IP address.

61. Plaintiff received the email promotions described in paragraph 39 above. These emails are only representative examples.

62. These emails were false or misleading in violation of CEMA, for misrepresenting the timing of the deals, as described herein, and the magnitude of those deals.

63. These emails contained false statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

**E. No Adequate Remedy at Law**

64. Plaintiff seeks an injunction. Plaintiff is permitted to seek an injunction because he has no adequate remedy at law. Legal remedies here are not adequate because they would not stop Defendant from continuing to transmit emails with false or misleading subject lines to Washington residents.

## V. CLASS ACTION ALLEGATIONS

65. Plaintiff brings the asserted claims on behalf of the following proposed class (the "Class"):

> All Washington residents who, during the Class Period and while present in Washington, received promotional emails from Billabong with subject lines either (i) stating a sale, discount, or price would end at a specified time but the same sale, discount, or price was extended upon expiration; or (ii) stating a sale, discount, or price is time limited, ending, or tethered to a holiday or event, when Billabong continued to offer or reinstated the same or comparable sale, discount, or price for a longer time.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

66. Plaintiff reserves the right to propose additional subclasses based on specific subcategories of emails and Class Members at class certification.

67. The Class Period is the time period beginning on the date established by the Court's determination of any applicable statute of limitations and ending on the date a class certification order is entered in this action. Thus, the statute of limitations begins no later than the date four years before this Complaint is filed.

68. The following people are excluded from the proposed Class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; and (3) Plaintiff's counsel and Defendant's counsel.

***Numerosity***

69. The proposed Class contains members so numerous that separate joinder of each member of the class is impractical. Upon information and belief there are at least tens of thousands of Class Members in Washington.

70. Class Members can be identified through Defendant's electronic mailing lists, internal records, and public notice.

***Predominance of Common Questions***

71. There are common questions of law and fact common to the proposed Class. Common questions of law and fact include, without limitation:

a. whether Defendant's email subject lines regarding purported discounts are false or misleading;

b. whether Defendant's email subject lines violate CEMA;

c. whether Defendant's email subject lines violate the CPA; and

d. the greater of actual damages or statutory damages due to the Plaintiff and the proposed Class.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

***Typicality & Adequacy***

72. Like members of the proposed Class, Plaintiff received emails from Defendant that contained false or misleading subject lines regarding discounts.

73. There are no conflicts of interest between Plaintiff and the Class.

***Superiority***

74. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI. CLAIMS

### Count 1: Violations of Washington's Commercial Electronic Mail Act
### (By Plaintiff and the Class)

75. Plaintiff incorporates paragraphs 1-74 above.

76. Plaintiff brings this cause of action individually and on behalf of members of the Class.

77. Defendant is a "person" under CEMA. RCW 19.190.010(11).

78. As alleged more fully above, Defendant violated CEMA by initiating the transmission of commercial electronic mail messages that contained false or misleading information in the subject line to Plaintiff's and Class Members' electronic mail addresses.

79. Defendant sent these emails to Plaintiff and Class Members for the purpose of promoting the Products for sale.

80. Defendant knew or had reason to know that it transmitted such emails to email addresses held by Washington residents, including Plaintiff's.

81. Defendant's acts and omissions violated RCW 19.190.020(1)(b).

82. Defendant's acts and omissions injured the Plaintiff and Class Members.

83. The balance of equities favors the entry of permanent injunctive relief against Defendant. Plaintiff, the members of the Class, and the general public will be irreparably harmed absent the entry of permanent injunctive relief. Defendant's unlawful behavior is ongoing as of the


EMERY | REDDY, PC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

date of the filing of this pleading, so without the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, is likely to reoccur.

84. Plaintiff and Class Members are therefore entitled to injunctive relief in the form of an order enjoining further violations of RCW 19.190.020(1)(b).

**Count 2: Violations of the Washington Consumer Protection Act via Misleading Emails**
**(By Plaintiff and the Class)**

85. Plaintiff incorporates paragraphs 1-74 above.

86. Plaintiff brings this cause of action individually and on behalf of members of the Class.

87. Plaintiff and Class Members are "persons" within the meaning of the CPA. RCW 19.86.010(1).

88. As alleged above, Defendant violated CEMA by initiating the transmission of commercial electronic mail messages to Plaintiff and Class Members that contained false or misleading information in the subject line.

89. A violation of CEMA is a per se violation of the CPA. RCW 19.190.030(1).

90. A violation of CEMA establishes all elements of the CPA as a matter of law.

91. As alleged more fully above, Defendant's transmission of commercial electronic messages to Plaintiff and Class Members that contained false or misleading information in the subject line also violates the CPA because it constitutes unfair or deceptive practices that occur in trade or commerce.

***Unfair Acts or Practices***

92. As alleged in detail above, Defendant committed "unfair" acts by falsely stating in email subject lines that it was offering a discount off the regular prices of its Products, and that the discount was only available for a limited time, when none of this was true (or at minimum was highly misleading).

93. The harm to Plaintiff and the Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting whether the Products are discounted and misrepresenting the duration of sales. Plaintiff and the Class's injury is not outweighed by any



EMERY | REDDY, PC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

countervailing benefits to consumers or competition. Misleading consumers only injures healthy competition and harms consumers.

***Deceptive Acts or Practices***

94. As alleged in detail above, Defendant's representations in email subject lines that the Products were on sale, that the sale was limited in time, and that customers were receiving substantial discounts, are deceptive.

95. Defendant's representations were likely to deceive, and did deceive, Plaintiff and other reasonable recipients. Defendant knew, or should have known, through the exercise of reasonable care, that these statements were inaccurate and misleading.

96. Defendant's unfair or deceptive acts or practices vitally affect the public interest and thus impact public interest for purposes of applying the CPA. RCW 19.190.030(3); RCW 19.190.100.

97. Defendant's acts and omissions caused injury to Plaintiff and Class Members. Violations of CEMA establish the injury and causation elements of a CPA claim as a matter of law. *See Harbers*, 415 F. Supp. 3d at 1002-04. ("by alleging a CEMA violation of RCW 19.190.020, a plaintiff alleges all five elements of a CPA violation . . . .Of particular relevance, a plaintiff alleging a CEMA violation under RCW 19.190.030(1) need not allege injury or causation beyond the CEMA violation. . . .Moreover, the Washington Supreme Court recently held that CEMA's liquidated damages provision, RCW 19.190.040, establishes the injury and causation elements of a CPA claim as a matter of law.") (citing *Wright v. Lyft, Inc.*, 189 Wash.2d 718 (2017)).

98. Under the CPA, "[p]rivate rights of action may … be maintained for recovery of actual damages, costs, and a reasonable attorney's fee. A private plaintiff may be eligible for treble damages," and "may obtain injunctive relief, even if the injunction would not directly affect the individual's own rights." Washington Pattern Jury Instruction Civil No. 310.00 (Consumer Protection Act—Introduction) (internal citations omitted); RCW § 19.86.090.

99. Under the CPA, Plaintiff and Class Members are entitled to seek, and do seek, the greater of actual damages and statutory damages of $500 per email that violates CEMA. In addition, Plaintiff and Class Members seek treble damages, which are permitted under the CPA, including for


EMERY | REDDY, PC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

CEMA violations. Plaintiff seeks treble damages to further Plaintiff's and Class Members' financial rehabilitation, encourage citizens to bring CPA actions, deter Defendant and other persons from committing CEMA violations, and punish Defendant for false and misleading advertising practices.

100. Plaintiff and Class Members are also entitled to, and seek, injunctive relief prohibiting further violations of the CPA.

## VII. JURY DEMAND

101. Plaintiff demands the right to a jury trial on all claims so triable.

## VIII. PRAYER FOR RELIEF

102. Plaintiff seeks the following relief for himself and the proposed Class:

A. An order certifying the asserted claims, or issues raised, as a class action;

B. A judgment in favor of Plaintiff and the proposed Class;

C. The greater of actual or statutory damages, treble damages, and punitive damages where applicable;

D. Pre- and post-judgment interest;

E. An injunction prohibiting Defendant's deceptive conduct, as allowed by law;

F. Reasonable attorneys' fees and costs, as allowed by law;

G. Any additional relief that the Court deems reasonable and just.

Dated: January 29, 2026

Respectfully submitted,

By: */s/ M. Anderson Berry*

Timothy W. Emery WSBA No. 34078
M. Anderson Berry, WSBA No. 63160
Brook Garberding, WSBA No. 37140
Gregory Haroutunian (*pro hac vice*)
Brandon P. Jack (*pro hac vice*)
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: 916.823.6955
*tim@emeryreddy.com*
*anderson@emeryreddy.com*
*brook@emeryreddy.com*

*gregory@emeryreddy.com*
*brandon@emeryreddy.com*

Alexander E. Wolf (*pro hac vice*)
awolf@milberg.com
**MILBERG, PLLC**
280 South Beverly Drive, PH
Beverly Hills, CA 90212
Tel: 872-365-7060

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2026, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

| | |
|---|---|
| Alexander E. Wolf, *pro hac vice* forthcoming<br>MILBERG, PLLC<br>280 South Beverly Drive, PH<br>Beverly Hills, CA 90212<br>Tel: 872-365-7060<br>E-mail: awolf@milberg.com<br><br>William J. Edelman, *pro hac vice* forthcoming<br>MILBERG, PLLC<br>227 W. Monroe Street, Suite 2100<br>Chicago, IL 60606<br>Tel: 771-474-1121<br>E-mail: wedelman@milberg.com | ***Co-Counsel for Plaintiff*** |
| Lauren B. Rainwater, WSBA #43625<br>Rachel Herd, WSBA #50339<br>Bryan Taylor, WSBA #55642<br>Joshua Peck, WSBA #64328<br>DAVIS, WRIGHT TREMAINE LLP<br>920 Fifth Avenue, Suite 3300<br>Seattle, WA 98104-1610<br>Tel: 206-622-3150<br>Fax: 206-757-7700<br>E-mail: laurenrainwater@dwt.com<br>rachelherd@dwt.com<br>bryantaylor@dwt.com<br>joshpeck@dwt.com | ***Attorneys for Defendant Boardriders IP Holdings, LLC*** |

Dated this 29th day of January, 2026, at Sacramento, California.

*/s/ Lori Martin*
Lori Martin, Paralegal
lori@emeryreddy.com